**BEFORE THE JUDICIAL PANEL ON**
**MULTIDISTRICT LITIGATION**

**IN RE:**

**ZAPPOS.COM DATA BREACH LITIGATION**                    **MDL-2357**

**SYLVIA ST. LAWRENCE'S RESPONSE TO ZAPPO'S MOTION TO TRANSFER**
**CASE FROM DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA –**
**CASE NO. 12-60133-CIV-DIMITROULEAS**

Sylvia St. Lawrence ("St. Lawrence"), by and through her undersigned counsel, pursuant to the directions of the Panel contained in the Notice of Filing and Publication of Briefing Schedule in this proceeding **[Docket #3]**, files her Response to the Motion to Transfer of Zappos.com, Inc. ("Zappos"), as set forth herein below:

**St. Lawrence Agrees That the Actions Should Be Centralized**

St. Lawrence agrees with Zappos that the proceedings more particularly identified in the Schedule of Actions **[Docket #1-2]** appended to Zappos' Motion to Transfer are well-suited for centralization under 28 U.S.C. § 1407. Because St. Lawrence is the only Plaintiff in the nine pending cases to have sued the correct business entity, transfer to the Southern District of Florida should be viewed favorably.

**Background**

Zappos is an online shoe and apparel shop conducting business through the medium of the Internet at its website, www.zappos.com. Zappos was founded in 1999 and, after a decade of success in selling shoes over the Internet, Zappos was acquired for $1.2 billion by Amazon.com, Inc., a Delaware corporation ("Amazon"). Amazon is the parent company of Zappos.[1] In the

---

[1] This apparently explains the references in Zappos' Motion to Transfer that the Plaintiffs in the cases appearing in Zappos Schedule of Actions **[Docket # 1-2]**, with the exception of St. Lawrence, have mistakenly sued Amazon.

course of its customary business, Zappos receives orders for shoes and other wearing apparel on its website. Every Zappos order requires the customer/purchaser to open an online account with Zappos, establishing a unique username and password, acceptable to Zappos. In order to transact business on the Zappos website, a customer/purchaser is required to provide Zappos with his or her name, address, telephone number, an email address and a credit card number (hereinafter collectively referred to hereinafter as "Personal Information"). Zappos maintains the Personal Information of all of its customers on servers. Zappos maintains the Personal Information of more than twenty-four million (24,000,000) persons on the servers it utilizes.

On or about January 15, 2012, the servers Zappos utilizes were "hacked"[2] by persons currently unknown. When the servers were hacked, the Personal Information of Zappos' customers/purchasers was exposed and compromised. Zappos has "publicly stated" that only partial credit card numbers of its customers/purchasers were obtained by the hackers, however complete credit card numbers were required to be provided to Zappos by each of the customers/purchasers and Zappos did maintain the complete number for each credit card on the servers. After the servers were hacked, Zappos recommended that its customers/purchasers change their user name and password on the Zappos website. Even more significantly, Zappos urged its customers to change login information on other commercial websites utilized by those customers/purchasers. This is clear recognition by Zappos that the Personal Information obtained by the hackers from Zappos' servers could potentially be used by "hackers" on other websites.

St. Lawrence and other individuals named in the Schedule of Actions, as well as other currently unnamed and unidentified customers/purchasers of Zappos have been exposed to a

---

[2] "Hacking" is the use of computer programming skills to gain illegal or unauthorized access to a file, database, network, or server.

possible injury that can be remedied or mitigated through recognized credit monitoring and identity theft protection coverage. As the party responsible for occasioning the exposure of the customers' Personal Information, Zappos should be required to provide this protection to its customers/purchasers.

### 28 U.S.C. § 1407

Section 28 U.S.C. § 1407 provides in part that "[W]hen civil actions involving <u>one or more common questions of fact are pending</u> in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings." (Emphasis added). § 1407 states that transfer is appropriate when the Panel makes a "determination that transfers for such proceedings <u>will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions.</u>" (Emphasis added). This Panel exercises large and unfettered discretion in determining each application for transfer. *In re Wilson*, 451 F.3d 161, 173 (3d Cir. 2006).

Here, centralization of the pending actions will avoid duplication of discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their respective counsel and the judiciary. *See In re KFC Corp. Fair Labor Standards Act Litigation*, 530 F.Supp.2d 1356, 1357 (J.P.M.L. 2008).

### ARGUMENTS

### Common Issues of Fact Exist In All of the Actions

Centralization of the actions is appropriate because all of the actions are based upon the same essential core of operative fact, i.e., that the each of the Plaintiffs was a customer of Zappos and each customer's Personal Information maintained on servers utilized by Zappos was compromised when the servers were "electronically intruded." Common questions exist as to the

extent of the Personal Information maintained on the servers, the nature and quality of the servers' security, how the servers were hacked, the Personal Information that was compromised by the hacking, and an appropriate remedy for the exposure of the Personal Information in order to avoid future injury and damage. These common questions of fact are detailed, to varying degrees, in the complaints currently pending in each action **[Docket ## 1-4 through 1-12, inclusive]**.

Any similarity or variance in the causes of action asserted in the pending complaints is not something that is to be considered under § 1407. *In re: Denture Cream Prods. Liab. Litig.*, 624 F. Supp. 2d 1379, 1381 (J.P.M.L. 2009) (Section 1407 does not require a complete identity or even a majority of common factual or legal issues as a prerequisite to centralization.); *In re Multidistrict Civil Antitrust Actions Involving Antibiotic Drugs*, 309 F.Supp. 155, 156 (J.P.M.L. 1970) (If requisite common issues of fact exist, the applicability of different legal principles will not prevent transfer of an action). Here, all actions share common questions of fact and are therefore appropriate candidates for centralization and coordination of pretrial proceedings under 28 U.S.C. § 1407.

Each of the pending actions is in its early stages. In virtually all of the pending actions, service of process is being completed or has just been perfected. In cases where service has been obtained, even against Amazon instead of Zappos, defense counsel has uniformly requested an extension of time to respond to the Complaint. The current posture of each of the pending actions clearly supports centralization. *Cf. In re Allianz Life Insurance Company of North America Deferred Annuity Marketing & Sales Practices Litigation*, 517 F.Supp.2d 1364, 1365 (J.P.M.L. 2007)(Centralization denied where four of the five constituent actions were more significantly advanced). Further, the fact that all of the actions sought to be consolidated are

seeking class treatment is consequential. District courts have concluded that centralization by the Panel offers many of the same benefits as class certification. *See In re Zyprexa Products Liability Litigation*, 467 F.Supp.2d 256, 269-70 (E.D.N.Y. 2006); *In re Copley Pharm. Inc.*, 158 F.R.D. 485, 492 (D.Wyo. 1994).

Common issues of fact are shared by all of the actions, thereby supporting transfer and centralization under 28 U.S.C. § 1407. For purposes of this Motion to Transfer, the issue appears to be - which is the appropriate district court to serve as transferee court?

## Zappos' Suggestion for Centralization in the District of Nevada is Not Well-Founded and Has No Discernible Support in the Motion to Transfer

Zappos seeks to centralize all of the pending actions in the District of Nevada. Zappos offers virtually no support for § 1407's standard the District of Nevada will be more "convenient" for the parties and witnesses and promotes the just and efficient conduct of such actions. The Panel is not provided with any evidence or proffer supporting the convenience of the District of Nevada, other than Zappos maintains its principal place of business in Henderson, Nevada. Zappos is a Delaware corporation that maintains offices in the District of Nevada, but Zappos fails to describe the specific nature of its business in the District of Nevada. Beyond maintaining its principal offices in Nevada, Zappos offers no analysis of how the district is more convenient for any of the other parties or any witnesses. What are its facilities in Nevada? What part of its business is actually conducted in Nevada? Is Nevada simply the physical location of its corporate officers? Does Zappos maintain other business locations within the United States? Where does Zappos maintain its inventory? From what location does Zappos ship its orders? Where are Zappos employees in charge of internet security based? Other relevant questions beg answers that are neither volunteered nor provided by Zappos. If the servers that were hacked are located in Kentucky, why then does Zappos seek centralization in Nevada? The Panel is not

advised as to whether the Kentucky servers are owned and maintained by Zappos, or some third party. Who are the individuals who possess the best source of information as to the content, operation, and security pertaining to these servers? The answers to all of these questions should bear directly on the Panel's considerations in choosing a transferee court.

St. Lawrence also asserts that the statutory standard of "convenience of the parties and witnesses", as well as the "just and efficient conduct of the actions" contemplates all of the parties and witnesses, and not just the defendant. Technology has rendered document management in complex litigation to no longer be a matter of geography. Volumes of documents can be stored, maintained, reviewed, and categorized in a central website. Access to the originals of these documents, at the point of their physical location, is no longer relevant. Convenience of the parties and witnesses for purposes of depositions and court hearings more often contemplates access to frequent and regular airline schedules directly to the transferee court. In this regard, Miami and Boston are clearly the best candidates.

Finally, Zappos also makes a cryptic reference to alleged contractual venue designations. These venue designations are apparently associated with an alleged mandatory arbitration provision that, in St. Lawrence's estimation, does not on its face apply to the claims in these actions. Notwithstanding, neither of Zappos' "venue" arguments are legally compelling and are factually deficient.

"Transfers under Section 1407 are simply not encumbered by considerations of *in personam* jurisdiction and venue." *In re Falstaff Brewing Corp. Antitrust Litigation*, 434 F. Supp. 1224, 1229 (J.P.M.L. 1977); *In re FMC Corp. Patent Litigation*, 422 F.Supp. 1163, 1165 (J.P.M.L. 1976). Zappos, for lack of a better word, "suggests" that the purported forum selection provisions are binding on this Panel in determining a transferee court. Not only is there no

authority to support this argument, the controlling cases are diametrically opposite to that argument. *See In re Tax Refund Litigation*, 723 F.Supp. 922, 924 (E.D.N.Y. 1989) ("While the MDL panel may transfer actions for pretrial purposes pursuant to 28 U.S.C. § 1406 unencumbered by venue restrictions, *In re New York City Mun. Sec. Litigation*, 572 F.2d 49 (2d Cir.1978), the court to which those actions are transferred must abide by the applicable venue requirements when transferring those actions for trial purposes. *Pfizer, Inc. v. Lord*, 447 F.2d 122, 124-24 (2d.Cir.1971)").

Any federal district court can administer the pretrial proceedings under § 1407 and rule on the venue issues when the pretrial proceedings are completed and the cases are ready to be remanded for trial. Additionally, to permit multiple analyses of Zappos' venue motions, pending or anticipated, invites disparate rulings and a possibility of inconsistency. As stated in *In re Peanut Crop Insurance Litigation*, 342 F.Supp.2d 1353 (J.P.M.L. 2004):

> We note, however, that in considering transfer under Section 1407, the Panel is not encumbered by considerations of venue. *In re Great Western Ranches Litigation*, 369 F.Supp. 1406, n. 1 (Jud.Pan.Mult.Lit.1974). An opposite conclusion would frustrate the essential purpose of Congress in enacting Section 1407 and providing for transfer of civil actions to "any district" by the Panel, namely, to permit centralization in one district of all pretrial proceedings when civil actions involving one or more common questions of fact are pending in different districts. *See In re Matter of New York City Municipal Securities Litigation,* 572 F.2d 49 (2nd Cir.1978). We also note that any action transferred under Section 1407 for coordinated or consolidated pretrial proceedings that has not been terminated in the transferee district court will be remanded to its transferor district for trial. *See* Rule 7.6, R.P.J.P.M.L., 199 F.R.D. 425, 436-38 (2001).

*Id.* at 1354. *See also New York City Municipal Securities Litigation*, 572 F.2d 49 (2d Cir. 1978) (". . . § 1407, unlike §§ 1404 and 1406, authorizes transfer of an action to 'any district' and not simply to a district where the action could have been brought.")

In the final analysis, Zappos' venue arguments are lacking in factual analysis and are simply not relevant to the determination of its Motion under 28 U.S.C. § 1407. Here, Zappos' suggestion of venue issues are designed to confuse otherwise clear evidence of common questions of fact and to frustrate pretrial proceedings that will be convenient for the parties and witnesses as well as promoting the just and efficient conduct of those actions.

St. Lawrence suggests that given the status of the various proceedings and Zappos' unequivocal denial that its parent company, Amazon, played any role in the electronic intrusion in its servers, the Southern District of Florida is currently that on district suited for centralization of these proceedings.

## The Southern District of Florida is the Only District Court Where the Correct Defendant is Being Sued

As noted in Zappos' filings, St. Lawrence's action pending in the Southern District of Florida is the only action where Zappos is correctly named and served with process. *See* Motion *to Transfer* [Docket # 1, pp. 1 and 3] and supporting Brief [Docket # 1-1, p. 1; p. 2, n. 2]. As to the other eight (8) pending cases, Zappos has specifically reserved this substantive and procedural error for purposes of defending those actions. *See Motion to Transfer* [Docket # 1, p. 1, n. 1]. Zappos has not indicated if it will seek dismissal of the other eight actions; agree to substitute itself as the defendant in those actions; or agree to the filing of an amended complaint against it and wait to be served. The uncertainty associated with Zappos' specific reservation of this defense directly impacts on whether any of the eight district courts currently hearing an action against Amazon can even qualify as a transferee court for centralized proceedings against Zappos. Without some resolution of this procedural problem in courts where an action is pending against Amazon, the Southern District of Florida appears to be the only court currently hearing a case against Zappos.

Assuming that Zappos, Amazon, and the Plaintiffs in the eight other actions find a shared and common avenue for proceeding against the correct business entity, St. Lawrence asserts that, as discussed immediately below, the District of Massachusetts is uniquely situated as the most desirable transferee court.

## Conclusion

Applying the language of 28 U.S.C. § 1407, it is apodictic that "common questions of fact" are pending in different districts and that the District Court for the Southern District of Florida or, alternatively, the District Court for Massachusetts is the overwhelmingly appropriate selection as the transferee court. St. Lawrence requests that this Court grant centralization of the actions set forth in the Schedule of Actions, with such other and further direction and relief as it deems appropriate.

Dated this ___21st___ day of March, 2012.

Respectfully submitted,

Charlip Law Group, LC
AVENTURA BAYVIEW BUILDING
17501 Biscayne Blvd. Suite 510
Aventura, FL 33160
Tel: (305) 354-9313
Fax: (305) 354-9314

By: _____
        David H. Charlip, Esq.
        FL Bar No. 329932