BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

IN RE: ZAPPOS.COM, INC., CUSTOMER
DATA SECURITY BREACH LITIGATION

MDL Docket No. 2357

**RESPONSE AND MEMORANDUM FOR THE CONSOLIDATED
NEVADA PLAINTIFFS IN SUPPORT OF DEFENDANT ZAPPOS.COM, INC.'S MOTION
TO TRANSFER TO THE UNITED STATES DISTRICT COURT OF NEVADA FOR
COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS
PURSUANT TO 28 U.S.C. § 1407**

Patti Hasner, Stephanie Preira, Robert Ree, Shari Simon and Katharine Vorhoff ("Plaintiffs"), the Lead Plaintiffs in *In re: Zappos Security Breach Litigation*, District of Nevada Case No. 2:12-cv-00182, comprised of plaintiffs from three of the Related Actions,[1] submit the following response and memorandum in support of the Motion for Transfer and Consolidation Pursuant to 28 U.S.C. § 1407 ("Motion") filed by Defendant Zappos.com, Inc. ("Zappos" or "Defendant" or "the Company").[2]

---

[1]The consolidated Nevada actions are: (1) *Stephanie Priera v. Amazon, Inc., d/b/a Zappos.com*, District of Nevada Case No. 2:12-cv-00182, (2) *Robert Ree v. Amazon, Inc., d/b/a Zappos.com*, District of Nevada Case No. 3:12-cv-00072, (3) *Shari Simon, et al. v. Amazon, Inc., d/b/a Zappos.com*, District of Nevada Case No. 2:12-cv-00232. Other Related Actions outside of Nevada are (1) *Dahlia Habashy v. Amazon.com Inc. d/b/a Zappos.com*, District of Massachusetts Case No. 1:12-cv-10145, (2) *Sylvia St. Lawrence v. Zappos.com, Inc.,* Southern District of Florida Case No. 0:12-cv-60133, (3) *Josh Richards v. Amazon.com, Inc. d/b/a Zappos.com.*, Middle District of Florida Case No. 6:12-cv-00212, (4) *Theresa D. Stevens v. Amazon.com Inc. d/b/a/ Zappos.com Inc.,* Western District of Kentucky Case No. 3:12-cv-00032, (5) *Stacy Penson v. Amazon.com Inc. d/b/a/ Zappos.com Inc.,* Western District of Kentucky Case No. 3:12-cv-00036, and (6) *Tara J. Elliot, et al. v. Amazon.com Inc. d/b/a/ Zappos.com Inc.*,Western District of Kentucky Case No. 3:12-cv-00037 (collectively, "Related Actions"). In addition, an action has been filed in Nevada State Court: *Metoyer v. Zappos Development, Inc*., Clark County Case No. A-12-655516-C.

[2]The Consolidated Amended Complaint in *In re: Zappos Security Breach Litigation*, and every complaint but one, named Amazon.com, Inc. ("Amazon") the corporate parent of Zappos, as a defendant. Further, the Nevada Plaintiffs name *both* Zappos and Amazon as defendants in the Consolidated Amended Complaint. Although Plaintiffs accept Zappos representation that

**PRELIMINARY STATEMENT**

All of the Related Actions share one common theory and factual allegation: that Zappos, a company headquartered in Nevada, negligently failed to properly safeguard its customers' confidential personal identifying information, in violation of its binding commitment to its customers. Zappos' negligence allowed cyber-hackers to infiltrate Zappos' computer network and obtain Zappos' customers' personal identifying information (the "data breach"), including, *inter alia*, names, account numbers, passwords, email addresses, billing and shipping addresses, phone numbers and the last four digits of the credit cards customers used to make purchases from Zappos ("personal identifying information"). The cyber-hackers, who have yet to be found, have used and continue to use this personal identifying information to commit and aid in identity theft against Zappos' customers. Indeed, Plaintiff Ms. Hasner and others have been subjected to identity theft and all of Zappos' customers are subject to an increased risk of identity theft.

Rather than provide the legally mandated immediate support to the victims of the data breach, the Company responded to the data breach by sending its customers an email. At the same time, Zappos' management, based in Las Vegas, Nevada, made the decision to shut down its customer call center, which is also located in Nevada, because of the anticipated volume of calls that Zappos' management expected to receive from concerned customers. Accordingly, the consolidated Nevada Plaintiffs further allege that Zappos failed to properly respond to the data breach.

---

Zappos is an independent company for purposes of this motion, Plaintiffs have not withdrawn their claims against Amazon. Significantly, Amazon is headquartered in Washington, a state that borders Nevada.

Zappos has moved to transfer all federal actions to the District of Nevada. Zappos' motion to transfer to Nevada is well-taken, because Nevada is the forum with an overwhelming interest in presiding over this dispute. The following considerations, *inter alia*, compel transfer to Nevada:

- Three of the Related Actions were filed in the District of Nevada and a fourth action has been filed in Nevada State Court. No other potential transferee forum has more Related Actions than Nevada.

- The Nevada actions are farther advanced than other the Related Actions; the three federal Nevada actions have been consolidated into one action, captioned as *In Re Zappos Security Breach Litigation*, Case No. 2:12-cv-00182. A Consolidated Amended Complaint (the "Nevada Consolidated Amended Complaint", attached hereto as Exhibit A) has been filed in that matter. The Nevada Consolidated Amended Complaint is the most comprehensive complaint of the Related Actions.

- Zappos' corporate headquarters are located in Las Vegas, Nevada and all of the decision makers who created and amended Zappos' internal security policies are located in Nevada. Thus, a majority of the witnesses are likely in Nevada.

- Amazon, a Defendant that is named in all but one of the Related Actions, has headquarters in Washington State; Nevada is far more accessible to Amazon witnesses than any other forum of the Related Actions.

- The District of Nevada has two courthouses, both of which are located near international airports that are at least three times larger than the airport nearest to the Western District of Kentucky.

- The Consolidated Nevada action, *In Re Zappos Security Breach Litigation*, is venued in Nevada's Southern District, which is located in Las Vegas.[3] Las

---

[3] 2 of the 3 cases filed in Nevada were filed in the District of Nevada's Southern Division, located in Las Vegas, which is home to one of the world's largest international airports. However, in the relatively unlikely event that *In Re Zappos Security Breach Litigation* were somehow transferred to the District of Nevada's Northern Division, which is based in Reno, the District of Nevada would still be more convenient than the Western District of Kentucky. The Reno-Tahoe International Airport ("Reno Airport"), although nearly 8 times smaller than Las Vegas' McCarran Airport, is still 3 times larger than Louisville Airport. Reno Airport accommodates approximately 5.1 million passengers annually and direct flights travel to Reno Airport from many locations worldwide. *See* Wikipedia Page for Reno-Tahoe International Airport, *available at:* http://en.wikipedia.org/wiki/Reno-Tahoe_International_Airport.

Vegas' McCarran International Airport ("McCarran Airport"), a centrally located international transportation hub that ranks as the twenty-second largest airport in the world, is a short taxi cab ride away from the federal courthouse. *See* Wikipedia Page for McCarran International Airport, *available at* http://en.wikipedia.org/wiki/McCarran_International_Airport. McCarran Airport accommodates approximately 40 million passengers annually and has the capacity to accommodate 53 million passengers and 625,000 aircraft movements annually. *See id.* Direct flights travel to McCarran Airport from many locations worldwide, including from the vast majority of the cities inhabited by counsel in this litigation

- In contrast, Louisville International Airport ("Louisville Airport"), the airport nearest to the Western District of Kentucky, handles approximately 1.7 million passengers annually, a total that is less than 5% of the number of passengers accommodated by Las Vegas' McCarran airport. *See* Wikipedia Page for Louisville International Airport, available at http://en.wikipedia.org/wiki/Louisville_International_Airport. There are also no direct flights between Louisville and Las Vegas.

- Judge Edward C. Reed, the Judge who consolidated the federal Nevada actions and before whom *In Re Zappos Security Breach Litigation* is pending, is a greatly respected and highly experienced jurist who is very capable of conducting MDL proceedings. Judge Reed has served on the bench in Nevada for over 30 years.

## **ARGUMENT**

Pursuant to 28 U.S.C. § 1407, transfer and consolidation of the numerous Related Actions to the District of Nevada is appropriate because: (a) the Related Actions involve common factual questions; (b) transfer to the District of Nevada will promote the just and efficient conduct of these actions; and (c) transfer to the District of Nevada will further the convenience of the parties and the witnesses. *See, e.g.*, 28 U.S.C. § 1407(a); *Manual on Complex Litigation*, Fourth ¶ 20.13 at 220 (2004).

**I.      Consolidation And Transfer of the Related Actions Is Appropriate**

   **A.      The Related Actions Involve Common Questions of Fact and Law**

The first requirement of Section 1407 – that the actions to be transferred involve common questions of fact – is clearly satisfied. All of the filed actions share the same primary factual and legal issues, to wit, whether the following was unlawful: Defendant's conduct in negligently

4

failing to protect and allowing the disclosure of its customers' personal identification. Some of the Related Actions also address whether Defendant's conduct in failing to properly respond to the breach caused by its negligent security was unlawful.

Although Zappos guarantees its customers that "you're absolutely safe while you shop," this contractual guarantee is false. Zappos failed to properly encrypt the confidential information provided by its customers. As a result of Zappos' deficient security, cyber-hackers were able to obtain the confidential information of over 24 million class members in January of 2012. Zappos responded to the data breach by shutting down its Nevada call center, rather than appropriately notifying the victims that their personal identifying information had been wrongly disclosed. These common facts form the basis of the Related Actions.

Similarly, although Plaintiffs in the different actions do not advance identical legal theories, the actions involve similar claims and will likely involve similar defenses.[4]

### B. Consolidation and Transfer to the District of Nevada Will Promote the Just and Efficient Conduct of These Actions and Serve the Convenience of the Parties and Witnesses

Consolidating and transferring these related actions to the District of Nevada will promote the just and efficient conduct of these actions and serve the convenience of the parties and witnesses. *See, e.g., In re Internal Revenue Serv. Tax Deferred Exch. Litig.,* MDL 1878, 2007 WL 3119287 at *1 (Oct. 18, 2007) (transferring related actions to the District of Nevada

---

[4] Among the Related Actions, the Nevada Consolidated Amended Complaint is the most comprehensive operative complaint. Not only is the Nevada Consolidated Amended Complaint the most factually detailed complaint, but also contains the most plaintiffs, is the most legally sophisticated, and alleges 8 well-researched causes of action. For example, the Nevada Consolidated Amended Complaint includes several causes of actions relating to Zappos' unlawful response to the breach. In contrast, the complaints filed in three actions pending in the Western District of Kentucky are nearly identical complaints that bring only four causes of action, none of which relate to Zappos' unlawful response to the data breach.

5

because the "District of Nevada will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation").

This is underscored by the fact that Zappos is headquartered in Nevada and, as a result, the District of Nevada is the District most accessible to the Defendant and most of the witnesses likely to be relevant to the dispute. Zappos' deficient security policies and procedures were created in Nevada. The contractual language on Zappos' website was formulated in Nevada. Similarly, Zappos' deficient response to the breach was formulated and executed in Nevada. Zappos' call-center, which was shut down for a week after the breach, is located in Nevada. Accordingly, the District of Nevada is by far the forum best positioned to justly, efficiently and conveniently conduct these actions.

## II.     The District of Nevada Is The Appropriate Transferee Forum

JPML Panels have articulated several factors for selecting the most appropriate transferee forum, including:

(1)   The district that has the most significant connection to the litigation and the district that provides the most convenience to the parties and witnesses. *See e.g., In re Delphi Corp. Secs., Derivative & ERISA Litig.*, 403 F. Supp. 2d 1358 (J.P.M.L. 2005)

(2)   The district where most of the actions have been filed. *See e.g., In re Parcel Tanker Shipping Servs. Antitrust Litig.*, 296 F. Supp. 2d 1370, 1371 (J.P.M.L. 2003)

(3)   The district's docket status. *See, e.g., In re Pressure Sensitive Labelstock Antitrust Litig.*, 290 F. Supp. 2d 1374, 1376 (J.P.M.L. 2003).

An analysis of these factors strongly favors the District of Nevada.

### A. The District of Nevada Is the Most Appropriate Forum Because it Has the Most Significant Connection to the Litigation And It Is the District Most Convenient for the Parties and Witnesses

28 U.S.C.A. §1407(a) provides that the Judicial Panel on Multidistrict Litigation make transfers based "upon its determination that transfers for such proceedings will be for the convenience of the parties and witnesses and will promote the just and efficient conduct of such actions." Using this statutory instruction, the Panel has repeatedly held that the most convenient transferee forum is the district where most of the witnesses and documents can be found. *See, e.g., In re: LivingSocial Marketing and Sales Practices Litig.*, MDL No. 2254, 2011 WL 3805967 at *1 (J.P.M.L., Aug. 22, 2011) ("We have selected the District of the District of Columbia as the transferee district for this litigation. LivingSocial is headquartered in the District of Columbia and, accordingly, the majority of relevant documents and witnesses are located there.").

As set forth above, Zappos is headquartered in Las Vegas, Nevada and a majority of the witnesses and relevant documents are located in Nevada. The Related Actions challenge the policies and procedures implemented by Zappos' management, individuals located in Nevada. Moreover, Zappos' security policies and procedures – the relevant documents central to the Related Actions - are also located in Nevada. The District of Nevada's close proximity to the parties, witnesses, and documents renders it the proper forum for transfer and consolidation.

In contrast to Nevada, no other potential forum can claim a similar "convenience [to] the parties and witnesses" that would "promote the just and efficient conduct of such actions." 28

U.S.C.A. §1407(a). The non-Nevada Related Actions are spread out around the country and no logical connection exists between any of those forums and litigation relating to the data breach.[5]

### B. Just As Many Related Actions Have Been Filed In Nevada As In Any Other Forum

Three of the Related Actions have been filed in the District of Nevada – this total is the same as the Western District of Kentucky and exceeds every other potential forum.[6] In addition, a fourth action arising out of the data breach has been filed in Nevada State Court. Taking into account the Nevada state court action, more cases are pending in Nevada than in any other state. The volume of cases in Nevada supports transfer to the District of Nevada. *See e.g., In re Parcel Tanker Shipping Servs. Antitrust Litig.*, 296 F. Supp. 2d 1370, 1371 (J.P.M.L. 2003).

---

[5] Plaintiffs' counsel in the Related Actions pending in Kentucky have asserted that the server accessed by the hackers was located in Kentucky. Zappos claims the server is located in Nevada. Plaintiffs are presently unsure of the location of the server, but the location of an internet server subject to internet attack is of little to no relevance to the pending motion, as all or nearly all of the relevant witnesses and documents would be in Nevada. Also, unlike the cases relied upon by those actions advocating Kentucky, the Defendants in the related actions here *do not agree* that the relevant evidence is located in Kentucky, but assert that Nevada is where this information is located. *See e.g.*, *In re Heartland Payment Sys. Inc.*, 626 F. Supp. 2d 1336 (J.P.M.L. 2009) ("Defendant and various plaintiffs maintain that discovery related to the data breach will be found in the Southern District of Texas…); *In re Sony Gaming Networks and Customer Data Sec. Breach Litig.*, 802 F.Supp.2d 1370, 1371 (J.P.M.L. 2011)("Defendants and certain plaintiffs represent that some discovery related to the data breaches may be found in this district…) Here, Defendant Zappos and various plaintiffs maintain that discovery related to the data breach will be found in the District of Nevada.

[6] The Panel routinely sends cases to a jurisdiction other than that in which the first case is filed if another jurisdiction provides a better forum for conducting MDL litigation. *See, e.g., In re W. States Wholesale Natural Gas Antitrust Litig.*, 290 F. Supp. 2d 1376 (J.P.M.L. 2003) (first filed case and majority of cases filed in the Central District of California; transferred to the District of Nevada); *In re Halftone Color Separations ('809) Patent Litig.*, MDL No. 1926, 2008 WL 1393026 (Apr. 10, 2008) (first filed in the Eastern District of Texas; transferred to the Central District of California). Because the cases in the Western District of Kentucky are no more advanced than any other cases and all other factors relevant to choice of forum favor the District of Nevada, it is of little moment that the first of the Related Actions was filed in the Western District of Kentucky.

The Nevada federal actions are moving forward efficiently and are being prosecuted expeditiously. Indeed, these actions have already been consolidated and the Nevada Consolidated Amended Complaint is a strong operative complaint. The fact that litigation in the District of Nevada is advanced also militates in favor of transfer. *See In re: Activated Carbon-Based Hunting Clothing Mktg. & Sales Practices Litig.*, MDL 2059, 626 F. Supp. 2d 1358, 1359 (JPML 2009) (transferring to the district where the litigation is "most procedurally advanced").

**C.     The District of Nevada's Docket Status Supports Transfer to That District**

The Panel has noted that an important factor in determining the proper transferee district is the docket conditions of potential transferee districts. *See, e.g., In re Teflon Prods. Liab. Litig.*, 416 F. Supp. 2d 1364, 1365 (J.P.M.L. 2006) (finding favorable the fact that transferee district "enjoy[ed] general docket conditions permitting the Panel to effect the Section 1407 assignment to a court with the present resources to devote to the pretrial matters that this docket is likely to require"). The District of Nevada has resources and a docket well suited to handle MDL litigation pertaining to the Zappos.com litigation.[7]

Indeed, the docket conditions of the District of Nevada are ideal for transfer. The District of Nevada currently has an active MDL docket and therefore a judiciary experienced in the handling of such matters. However, transfer of this MDL to the District of Nevada will not unduly burden the Court's resources because, as of January 11, 2012,[8] there are three MDL

---

[7] Indeed, the District of Nevada as a whole is efficient; civil cases in the District of Nevada take an average of just 8.1 months from filing to disposition, whereas cases filed in the Western District of Kentucky take an average of 10 months from filing to disposition. *See* Federal Court Management Statistics at 73, 39, *available at* http://www.uscourts.gov/viewer.aspx?doc=/uscourts/Statistics/FederalCourtManagementStatistics/2011/District FCMS Profiles September 2011.pdf

[8] *See* DISTRIBUTION OF PENDING MDL DOCKETS (as of January 11, 2012), *available at:* http://www.jpml.uscourts.gov/Pending_MDL_Dockets-By-District-January-2012.pdf.

9

proceedings pending in the District of Nevada, with only 11 actions collectively pending in those proceedings, none of which are currently before Judge Reed.

## **CONCLUSION**

The factors set forth in 28 U.S.C. §1407(a) favor consolidation and transfer of the Related Actions to the United States District Court for the District of Nevada. For each of the above-stated reasons, consolidation and transfer of all Related Actions to the District of Nevada is appropriate.

Respectfully submitted,

Dated: March 21, 2012

By: /s/ James L. Kauffman
Peter J. Mougey
James L. Kauffman
**LEVIN PAPANTONIO THOMAS MITCHELL RAFFERTY & PROCTOR, P.A.**
316 South Baylen Street, Suite 600
Pensacola, Florida 32502-5996
Telephone: (850) 435-7068
Facsimile: (850) 436-6068
pmougey@levinlaw.com
jkauffman@levinlaw.com

Jeffrey I. Carton
D. Greg Blankinship
Jeremiah Frei-Pearson
**MEISELMAN DENLEA PACKMAN CARTON & EBERZ, P.C.**
1311 Mamaroneck Avenue
White Plains, New York 10605
Tel: (914) 517-5000
Fax: (914) 517-5055
jcarton@mdpcelaw.com
gblankinship@mdpcelaw.com
jfrei-pearson@mdpcelaw.com

Michael Goldberg
Marc Godino
**GLANCY BINKOW & GOLDBERG LLP**
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
info@glancylaw.com

*Co-Lead Counsel for the*
*Consolidated Nevada Actions*

Brent Carson
**WINNER & CARSON**
510 S. Eighth Street
Las Vegas, NV 89101
Tel: (702) 471-1111
Fax: (702) 471-0110
bac@winnercarson.com

*Liaison Counsel for the*
*Consolidated Nevada Actions*